UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **JEFFERY BROUSSARD** | **CIVIL ACTION NO. 3:11-cv-2006** |
| | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **OFFICER ROBINSON, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Jeffery Broussard, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on November 7, 2011; thereafter, he filed an amended complaint and a motion for an injunction seeking his transfer to another facility or his placement in the federal witness protection program. Plaintiff is a detainee in the custody of the Sheriff of Morehouse Parish. When he filed this suit he was incarcerated at the Morehouse Parish Jail (MPJ); he was subsequently transferred to the Morehouse Parish Detention Center (MPDC) where he is currently incarcerated under protective custody status. He is awaiting trial on various felony charges pending in the Fourth Judicial District Court.[1] In general he complains that he is denied access to courts and that he is in fear for his life because he has been threatened by other inmates and by the corrections officers at MPJ and MPDC. For the following reasons it is recommended that plaintiff's complaint and motions be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state

---

[1] According to a news article in the online version of the <u>Bastrop Enterprise</u>, plaintiff was arrested in May 2011 and charged with two counts of armed robbery which were alleged to have occurred at the AT&T Wireless Store on Mer Rouge Road, Bastrop, and at Advance American on East Madison Street in Bastrop. He was also charged with an armed robbery of the Verizon Wireless Store in Monroe, Louisiana.

http://www.bastropenterprise.com/news/x1539857759/Armed-robbery-suspect-in-custody

a claim for which relief may be granted.

## Background

### 1. Original Complaint [Doc. 1]

In a letter dated October 31, 2011, mailed on November 5, 2011, and received and filed on November 7, 2011, plaintiff, who was then incarcerated at the Morehouse Parish Jail (MPJ), complained that he was threatened with physical injury by corrections officials at the MPJ. In this letter he claimed that he was visited by his fianceé on October 22, 2011, and "...we talked about this law suit, not realizing that they [were] recording our conversation." After the visit, plaintiff overheard Officer Robinson talking about the conversation "with some of the inmates who are trying to murder" plaintiff. Robinson allegedly remarked that when the Warden hears the recording, "...he is going to go ahead and let them ... kill him before he let they [sic] law suit leave this building."

Plaintiff claimed that he filed a grievance against Sgt. Tommy Cooper on September 16, 2011; plaintiff spoke to the Warden about this grievance on October 3, 2011. According to plaintiff, "One of the items the Warden used in support of Sgt. Tommy Cooper's response to my grievance was a copy of my out going and incoming mail list. The Warden provided this mailing list as a conniving attempt to conceal the fact that Sgt. Tommy Cooper is responsible for a missing (40) Dollar money order." According to the Warden, the plaintiff's sister was not on the mailing list and therefore she could not send money to the plaintiff. Plaintiff, however, believes that the money order was discarded in an attempt to prohibit plaintiff from purchasing "legal supplies" and thus deny plaintiff access to the this Court. According to plaintiff, the Warden and others have intercepted letters plaintiff mailed to "federal authorities" over the 5 months that plaintiff has been incarcerated at MPJ in an effort "to conceal criminal liability, namely conspiracy to commit premeditated murder,

obstruction of justice and the violations of [plaintiff's] civil rights." Plaintiff concluded the letter by asserting that he is "...in imminent danger of very severe physical injury or death..." He then requested emergency help as soon as possible – namely an injunction ordering Warden Harrison and Sgt. Cooper to allow him to mail his 1983 civil rights complaint to the District Court. As noted above, this letter was received and filed on November 7, 2011.

*2. Amended Complaint [Doc. 2]*

Thereafter, on December 2, 2011, plaintiff filed a 20 page civil rights complaint [Doc. 2], 90 pages of exhibits [Doc. 2-1], a motion to proceed *in forma pauperis*, and a letter advising the Clerk of plaintiff's transfer from MPJ to the Morehouse Parish Detention Center on November 29, 2011. [Doc. 6].

Plaintiff utilized the form provided to prisoners in this District for use in filing civil rights complaints pursuant to Section 1983. Plaintiff named the following defendants – MPJ Warden Billy Harrison, MPJ Corrections Officer, Sgt. Tommy Cooper, Morehouse Parish Sheriff Mike Tubbs, and Steve Sylvester, an Assistant District Attorney in the Fourth Judicial District. In this complaint plaintiff prayed for $250,000 in damages; that "... all felony charges [be] dismissed..."; and, for the "relocation" of plaintiff and his fianceé "under federal protection program."

Read liberally, the complaint and exhibits indicate that on June 30, 2011 plaintiff submitted a hand-written "complaint" to the District Attorney in Bastrop in which he complained that he was "being denied indigent legal supplies, access to the law library, access to a notary service and to making [sic] legal copies for the courts." In the "complaint" he also indicated that he was in fear because Warden Harrison threatened his life. Plaintiff requested a copy of the evidence of his co-defendant's (Henry Bates) 72 hour hearing. He also requested video surveillance evidence from the

jail records and an order directing the Warden to submit to a polygraph test. He further related in this document that sometime in May 2011 he was interrogated by Warden Harrison and threatened about his testimony which implicated and inculpated his co-defendant Henry Bates.[2] Harrison allegedly threatened plaintiff in an attempt to have plaintiff recant testimony concerning Bates. Plaintiff requested that Warden Harrison be charged with public intimidation, retaliation, intimidating a witness, obstruction of justice and malfeasance and conspiracy to commit murder. He also related another incident that occurred on June 4, 2011 when Bates threatened his life. Plaintiff alleged that he is in fear for his life because Warden Harrison is a friend of Bates's father. He claimed that Bates is an "extremely powerful gangsta [sic] [who] used drugs, intimidation, and the threat of death to force [plaintiff] to commit these offenses ... [and] influenced the warden to commit criminal acts and he has the power and or influence to pay a lawyer to get away..." He concluded the "complaint" with a request that he be protected from Warden Harrison "who is conspiring with Henry Bates to murder me and my [fianceé] Belinda Moore..." He prayed for a "full investigation" and protection and relocation under the "state protection program." [Doc. 2-1, pp. 1-7]

Thereafter, plaintiff filed an "amendment" to his complaint filed with the District Attorney. He complained that in May 2011 he requested "indigent legal supplies" in order to "work on my case and help my lawyer prepare a defense." According to the amended complaint, Sgt. Cooper advised plaintiff that he discarded plaintiff's request and, advised further that indigent supplies are provided only on the first and fifteenth of each month. He also complained that Sgt. Richland denied plaintiff

---

[2] Bates was also arrested and charged with four counts of armed robbery and four counts of conspiracy to commit armed robbery.

http://www.bastropenterprise.com/news/x600914669/Second-suspect-arrested-in-robberies

access to the law library. He also complained that he was being denied notarial services and the ability to file pleadings in the United States Court. He concluded by complaining that he advised his court appointed attorney about these facts, but the attorney "... has not done anything to help me or protect me or my family..." [Id., pp. 8-18] He complained that in August 2011 he noticed an inmate "and three more gangsters conspiring to murder [him]..." [Id., p. 26] Thereafter plaintiff complained that on various dates he overheard inmates plotting to murder him for a $7000 bounty. [Id., p. 74]

These "complaints" or grievances were directed to the District Attorney through his assistant, Steve Sylvester, or to Sheriff Tubbs. According to plaintiff, Sylvester and Tubbs failed to respond or to initiate the investigations demanded by plaintiff on July 12, 2011, August 1, 2011, August 3, 2011, September 15, 2011, September 16, 2011, September 17, 2011, October 3, 2011, October 13, 2011. Plaintiff claimed that he "was almost murdered on July 28, 2011" and makes reference to "Affidavit and Criminal Complaint for Details. Exhibit #33.1." However, according to the document referred to, plaintiff merely alleged that he witnessed suspicious behavior and overheard whispered threats made by fellow inmates. [Doc. 2-1, pp. 65-68]

### 3. Notice [Doc. 7]

On December 12, 2011, plaintiff again notified the court that he was confined at the MPDC.

### 4. Letter [Doc. 8]

In a letter dated December 12, 2011 which was received and filed on December 14, 2011, plaintiff advised that the case title was incorrect and should read "Jeffery Ornelia Broussard v. Warden Billy Harrison." Plaintiff was thereafter advised by the Clerk of Court that his concerns over the title of the suit were groundless.

5

*5. Letter [Doc. 9]*

In another letter dated December 12, 2011, and received on December 19, 2011, plaintiff again complained about the title of the suit as it appeared on the court's docket sheet.

*6. Letter/Motion for Injunctive Relief [Doc. 10]*

Finally, in a letter dated December 25, 2011, and received and filed on December 30, 2011, plaintiff again advised the court that he lives "in absolute fear for [his] life every day as [he has] been for the [past] (5) five months..." He summarized his original and amended complaints by alleging, "I have been [threatened] with serious physical injury or death twice on two different occasions in person by Warden Bill Harrison..." He also alleged, "There has been two attempts at causing me severe physical injury or death. The first attempt was on 7-28-11 and the next attempt was 11-26-11, I'm being treated inhuman like a animal torture and tormented mentally daily by death threats from inmates and officers..."

He admitted that he has been in lock-down for 138 days and in protective custody status for 105 days." He claimed that on November 29, 2011, Judge Manning ordered him transferred to MPDC for his safety, but plaintiff claimed that this transfer "made the situation more dangerous."

He alleged that on December 7, 2011, he overheard Warden Fife and other officers talking about murdering plaintiff in the middle of the night. He also claimed that Fife was reading the log book to determine when plaintiff showered so that he could be murdered in the shower. As a result, plaintiff has only taken 3 showers in four weeks for fear of being murdered. Thereafter he asked Warden Brown if he was safe and the Warden assured him he was.

*Law and Analysis*

*1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998). On the other hand, a complaint is frivolous if it lacks an arguable basis in law (i.e. it is based upon a undisputably meritless legal theory) or in fact (i.e. the facts are clearly baseless, a category including allegations that are fanciful, fantastic, or delusional). *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir.1995); *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Herndandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986). District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff has filed an original complaint and an amended complaint accompanied by some 90 pages of exhibits. Plaintiff has adequately set forth the parameters of his claim and need not be afforded the opportunity for further amendment.

*2. Access to Courts*

Plaintiff claims that he is being denied access to the law library and to legal supplies (paper, pens, and notarial services) and, that prison authorities have interfered with his incoming and outgoing legal mail. He thus contends that the defendants have denied him access to courts both with regard to the prosecution of the instant civil action and also with regard to his attempts to assist his court-appointed attorney in the defense of pending criminal charges.

"It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999); *Bounds v. Smith*, 430 U.S. 817,

97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821; *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).

Plaintiff has not shown how his ability to prepare and transmit legal documents has in any way been inhibited. Indeed, the evidence clearly establishes that plaintiff has been permitted to prepare and to file numerous legal documents including, (1) his four page original complaint on November 7, 2011 [Doc. 1]; (2) his 20 page amended complaint which was accompanied by (3) 90 pages of exhibits [Doc. 2], (4) a pro se motion to proceed *in forma pauperis* [Doc. 4], and (5) a notice of change of address [Doc. 6] filed shortly thereafter; (6) another notice of change of address [Doc. 7]; (7) inquiries about the status of his suit [Docs. 8 and 9]; and, (8) finally, on December 30 a "letter/motion" raising concerns about his safety and requesting a transfer and placement in a witness protection program. [Doc. 10]

Plaintiff also claimed of interference with his "legal mail." "A prison official's interference with a prisoner's legal mail may violate the prisoner's constitutional right of access to the courts. Additionally, such interference may violate the prisoner's First Amendment right to free speech — i.e ., the right to be free from unjustified governmental interference with communication." *Brewer*

9

*v. Wilkinson*, 3 F.3d 816, 820, (5th Cir.1993), *cert. denied*, 510 U.S. 1123, 114 S.Ct. 1081, 127 L.Ed 2d 39 (1994). However, in order to state a claim based on delay or interference with the mail, or that the prisoner was otherwise denied his right of access to the courts, a plaintiff must show actual injury. *See Lewis v. Casey*, 518 U.S. 343, 351-54, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). He must "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury" is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. The Supreme Court, discussing the "actual injury" requirement held that: "The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355.

      Plaintiff has not shown that he was prejudiced in his ability to litigate this law suit or any other with respect to the alleged acts of interference. Further, with regard to his claim that he has been denied the opportunity to assist court-appointed counsel in the defense of his pending criminal charges, he likewise fails to state a claim for which relief may be granted. In *Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir.1981) the Fifth Circuit held that in the absence of extraordinary circumstances, a criminal defendant represented by counsel does not have a constitutional right to file every *pro-se* motion he wants to file in addition to his attorney's motions. In *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir.1996) the Fifth Circuit held that an inmate who rejected the assistance of his court-appointed attorney 'had no constitutional right to access a law library in preparing the

*pro-se* defense of his criminal trial.'

In other words, providing legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library. *See Lewis v. Casey*, 518 U.S. 343, 350-51, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (relying on *Bounds v. Smith*, 430 U.S. at 830, 97 S.Ct. 1491. Plaintiff has not been denied access to the courts either with regard to the litigation of this *pro se* civil rights complaint or with regard to his pending criminal charges. Plaintiff's access to courts claims are frivolous.

### 3. Threats

Plaintiff's main claim – set forth in both the original and amended complaints [Docs. 1 and 2] and in plaintiff's motion for transfer [Doc. 10] and his various complaints submitted to the District Attorney, the Sheriff, and others [Doc. 2-1] – is that he fears for his safety because of threats he has either heard or overheard from other inmates and corrections officers. Read liberally, and giving plaintiff the benefit of every doubt, his claims concerning his fear of reprisal from his co-defendant, corrections officers, or, his fellow inmates, are delusional. Plaintiff implies that he has lived under the constant danger of physical harm since the date of his arrest and incarceration in May 2011. He cites specific instances where these threats were either spoken to him, or, were overheard by him in the context of discussions accompanied by "suspicious behavior." Nevertheless, and notwithstanding plaintiff's belief, he has reported NO acts of physical violence during the 8 month period between the date he was incarcerated and the date of his last pleading.

Plaintiff has thus based his complaint entirely upon alleged verbal threats, and such threats, without more, do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.1983).

11

Further, when plaintiff raised these claims in his complaints to state and parish officials, he was ordered transferred to his present place of confinement where he apparently remains in protective custody. Other than his conclusory and arguably delusional allegations, plaintiff has offered no reason to warrant this Court's involvement in the day to day administration of the Morehouse Parish criminal justice system.

Further, plaintiff seeks relief not available in this civil action. As noted above, plaintiff has, with regard to this claim, demanded his immediate release from custody, the dismissal of the pending criminal charges, or his immediate transfer to another facility and the issuance of a "federal protection" order.

Transfer to another facility is not available. Broad discretionary authority must be afforded to prison administrators because the administration of a prison is "at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974) To hold that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts. *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). Plaintiff is lawfully incarcerated – he is detained pending trial on serious felony charges. He has no constitutional liberty interest in being held in any particular institution. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741,

75 L.Ed.2d 813 (1983); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Adams v. Gunnell*, 729 F.2d 362, 368 (5th Cir. 1984); *Oladipupo v. Austin,* 104 F.Supp.2d 643 (W.D.La. 2000).

Further, to the extent that he seeks federal intervention into his pending criminal prosecution, and his immediate release from custody, he fails to state a claim for which relief may be granted. The Supreme Court has long held that a prisoner in state custody cannot use a §1983 action to challenge "the fact or duration of his confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 489, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); see also *Wolff v. McDonnell*, 418 U.S. 539, 554, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Heck v. Humphrey*, 512 U.S. 477, 481, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *Edwards v. Balisok*, 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

Thus, to the extent that plaintiff attacks the fact of his incarceration and to the extent he seeks his immediate release from custody and the dismissal of pending criminal charges, he fails to state a claim for which relief may be granted pursuant to 43 U.S.C. §1983. His proper remedy is a petition for *habeas corpus* relief filed pursuant to the provisions of 28 U.S.C. §2241. *Dickerson v. Louisiana*, 816 F.2d 220, 224 (5th Cir.), *cert. denied*, 484 U.S. 956 (1987)

However, plaintiff should be aware that state prisoners, including detainees, are not entitled to seek federal *habeas corpus* relief – whether pursuant to 28 U.S.C. §2241 or §2254 – until such time as they have exhausted available state court remedies. *See Preiser*, 411 U.S. at 491; see also *Dickerson v. Louisiana*, 816 F.2d 220, 224 (5th Cir.), *cert. denied*, 484 U.S. 956 (1987). A prisoner seeking federal *habeas corpus* relief cannot collaterally attack his state court conviction or his pre-trial detention by the state in federal court until he has exhausted available state remedies. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198 (1982); *Minor v. Lucas*, 697 F.2d 697 (5th Cir.1983). The

exhaustion requirement is a judicial abstention policy developed "... to protect the state courts' opportunity to confront and resolve initially any constitutional issues arising within their jurisdictions as well as to limit federal interference in the state adjudicatory process." *Dickerson*, 816 F.2d at 225; *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509 (1971); *Shute v. Texas*, 117 F.3d 233 (5th Cir.1997).

In order to satisfy the exhaustion requirement, the petitioner must have provided <u>all state courts that could review the matter with a fair opportunity to review all of his *habeas corpus* claims before a federal court will review those claims</u>. *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 277 (1982); *Picard*, 404 U.S. 270. With regard to *habeas* petitions filed under 28 U.S.C. § 2241 by pre-trial detainees, while there is no express statutory requirement that the detainee exhaust state court remedies prior to asserting his claims in federal court, nevertheless, a body of jurisprudential law requires such persons seeking such relief pursuant to § 2241 to first exhaust state court remedies before seeking federal intervention. *Dickerson*, 816 F.2d at 224-225; *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 489-90, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); *Robinson v. Wade*, 686 F.2d at 303, n. 8 ("Although section 2241 contains no statutory requirement of exhaustion like that found in section 2254(b), exhaustion of state remedies has been held a necessary prelude to its invocation.")

Exhaustion in this context means that a federal litigant must fairly present his constitutional claims to the highest state court in a procedurally correct manner before he can raise those claims in federal court. *Ries v. Quarterman*, 522 F.3d 517 (5th Cir.2008). Further, to the extent that plaintiff now asks or, may later ask this court to interfere with or restrain the on-going criminal prosecution in either Morehouse or Ouachita Parish, abstention pursuant to *Younger v. Harris*, 401

U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) would likely be deemed appropriate. The *Younger* abstention doctrine expresses the fundamental policy against federal interference with state criminal prosecutions.

Finally, to the extent that plaintiff seeks placement in a federal witness protection program for himself and his fianceé, that relief is also unavailable. Witness relocation and protection are functions of the Attorney General and the Department of Justice and not the federal courts. 28 U.S.C. §3521.

### *4. Grievances*

Plaintiff also implies that he is entitled to relief because the defendants failed to respond to his complaints and grievances. In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional *minima*. See *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (holding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"); *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) (Prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction; any alleged due process violation arising from the alleged failure to investigate prisoner grievances is indisputably meritless); (see also *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d

1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substantive right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991 *(per curiam)* (concluding regulations providing for administrative remedy procedure do not create liberty interests in access to that procedure); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

Since there is no constitutionally protected right to participate in a grievance procedure, plaintiff's complaint fails to state a claim for which relief may be granted.

### *Recommendation*

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaints [Docs. 1 and 2], including his Motion for Transfer or Placement [Doc. 10] be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B);

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** See *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, January 12, 2012.

*[signature]*
KAREN L. HAYES
U. S. MAGISTRATE JUDGE